EDWIN W. STEVENS & others *vs.* INHABITANTS OF LINCOLN.

A town built a school-house partly upon its own land and partly upon land to which it had no title. In a suit to enforce a mechanic's lien, *Held*, that there was no lien upon the land to which the town had no title, or upon that part of the building covering it; and that if there could be a lien upon the remainder, it could only be for work there done.

PETITION to enforce a mechanic's lien upon a lot of land and the school-house thereon, for work done upon the school-house.

At the trial in the Superior Court, before *Wilkinson*, J., without a jury, it appeared that the town of Lincoln duly appointed a committee to build the school-house; that this committee executed in behalf of the town a contract in writing with one Hoar to build it and to furnish the materials therefor for $6500; that Hoar contracted with each of the petitioners to do and furnish the work for which he sought payment; that there was due the petitioner Edwin W. Stevens $151.69; the petitioner Henry S. Jewett $158.46; the petitioner Sherman H. Barrett $132.05; the petitioner Albert A. Haynes $142.21; and the petitioner Jonas A. Barrett $138.88; that the certificates were in due form, and that they and the petition were filed in due time.

The following is the only material evidence relating to the land and the authority of the committee to contract for building the school-house thereon.

The petitioners called one John C. Chapin, who testified that he was and for a long time had been treasurer of the town and one of the selectmen; that he was a member of the building committee appointed to build the school-house; that the committee made the contract with Hoar in behalf of the town; that the school-house was built partly upon the site of a formerly existing school-house; that the new school-house covered twice as much land as the old one; that it covered most of the land covered by the old one and some of his land which lay on the northerly, westerly and southerly sides of the lot on which the old school-house stood, and also a small piece of land at the southerly corner belonging to the First Parish; that the lot on which the old school-house stood measured about twenty-four feet on the Bedford Road,

and was about thirty-six feet deep, and that he could not give the dimensions of the new one ; that he had made diligent search for a deed to the town of any part of the land, and had searched in the Middlesex Registry for the record of any such deed, and could not find any such deed or any record of such a deed; that he had not given the town any deed of that portion of his land covered by the school-house, but had consented that the town might use it for school purposes so long as they maintained a town school-house thereon ; that the building committee, acting under a vote of the town, duly passed, caused the old school-house to be removed and sold, and the proceeds thereof to be paid into the town treasury ; that the old school-house had been used by the town for a school-house more than twenty years. On cross-examination he testified that after the work was done for which the petitioners sought to recover, Hoar surrendered his contract for building the school-house because he was not able to fulfil it, and that the committee finished the building.

The petitioners called one Henry C. Chapin, who testified that he was and for a long time had been clerk of the town and had resided therein over thirty years, and that during that time the town had used the old school-house for school purposes ; that adjoining the old school-house was a small building used during that time by the town to keep the town hearse in ; that at a town meeting legally called in 1870, before work on the school-house was commenced, John C. Chapin and others were elected a committee to build a new school-house, with authority to remove the old school-house and hearse-house, if necessary for the location of the new school-house ; that the old buildings were removed and the new house erected covering a portion, if not the whole, of the land on which the old school-house and hearse-house stood.

The respondents asked the court to rule that the petitioners had not maintained their liens, but the court declined so to rule, and found on the evidence that the petitioners had maintained their liens upon the building described in the petition and on so much of the land covered by it as was contained in the following description, to wit, the land formerly covered by the old school

house, bounded easterly on road to Bedford about twenty-four feet, and southerly, westerly and northerly on land of James L. Chapin, and ordered a sale accordingly. And the respondents alleged exceptions.

*T. S. Dame,* for the respondents.

*N. Morse,* for the petitioners.

DEVENS, J. Assuming that the respondents had acquired a title to that portion of the land formerly covered by the old school-house, which is the aspect of the evidence most favorable to the present claim, the petitioners are seeking by this process to enforce a lien for work done upon a building which stands partly upon the land of the respondents and partly upon that of two other parties. They have not undertaken to show how much of the work for which they claim was done on that portion of the building which stands upon the land of the respondents, but seek to enforce their entire debts by a lien upon the building and so much of the land under the same as was formerly covered by the old school-house, and to this extent the learned judge who presided at the trial has decided that they have maintained their liens, and ordered a sale accordingly. We do not think, however, that this view of the matter can be sustained. It is well settled that if a party for whom work is done has an interest in a building only as personal property, the owner of the land never having consented to or authorized such work thereon, no lien can attach thereto, and this because such party has no interest which can be sold so as to render the lien effectual; and further, that it is not contemplated by the statutes that there shall be any severance of the building, or a sale of it or of any interest in it separate from an interest of the owner in the land itself. *Belding* v. *Cushing,* 1 Gray, 576. *Hayes* v. *Fessenden,* 106 Mass. 228.

Upon that portion of the building which stands upon the land of third parties, there can, therefore, be no effectual lien, because there is no interest which the respondents have in the land on which it stands that can be in any manner the subject of a sale or conveyance. Even if the two portions of the building, that which stands on the land of the defendants and that which stands upon the land of third parties, could be treated as separate struct-

ures, the plaintiffs would still be unable to enforce a lien for their claims ; they would be compelled, in order to do so, to show how much of the work was done upon that structure upon which there could be a valid lien. There could not be a lien upon one structure for work done upon another to which no lien attached, no matter how closely they were united, or upon one part for work done upon the other part. *Rathbun* v. *Hayford*, 5 Allen, 406. *Landers* v. *Dexter*, 106 Mass. 531. In the present case, either no means existed by which the amount of labor and material furnished for the part of the building which stood on the old school-house lot could be distinguished from that furnished for the other part, or if there did, the petitioners failed to offer any evidence from which it might be ascertained.

The view of the case which we have taken renders it unnecessary to consider whether or not a lien can be enforced against the property of a town, which it holds in order to enable it to perform the duties devolved on it by law as a municipal corporation.

*Exceptions sustained.*